UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
------------------------------------------------------------------X
JEFFREY BODOFF, as Administrator of
the Estate of Yonathan Barnea,
453 Barnard Avenue
Cedarhurst, New York 11516
SHLOMIT BARNEA,
URI BARNEA,
TAMARA BARNEA, and                                               Civil Action No.:
NACHUM BARNEA,
5 Elroi David Street
Jerusalem, Israel,
                Plaintiffs,                          **COMPLAINT**
   - against -

THE ISLAMIC REPUBLIC OF IRAN
Ministry of Foreign Affairs
Khomeini Avenue
United Nations Street
Teheran, Iran,

THE IRANIAN MINISTRY OF INFORMATION AND SECURITY
Pasdaran Avenue
Golestan Yekom
Teheran, Iran

AYATOLLAH ALI HOSEINI KHAMENEI
Supreme Leader of the Islamic Republic of Iran
Office of the Supreme Leader
Palestine Street
Teheran, Iran

ALI AKBAR HASHEMI-RAFSANJANI
Former President of the Islamic Republic of Iran
Presidential Office
Palestine Street
Teheran, Iran,
                - and -

ALI FALLAHIAN-KHUZESTANI
Former Minister of Information and Security
Ministry of Information and Security
Pasdaran Avenue
Golestan Yekom
Teheran, Iran
                Defendants
------------------------------------------------------------------X

        Plaintiffs, by their attorneys, The Abramson Law Group, PLLC, as and for their

complaint against the defendants herein, respectfully allege as follows:

## INTRODUCTION

1. Plaintiffs are the surviving family members and the administrator of the estate of Yonathan Barnea, a United States citizen murdered in a terrorist bombing on a passenger bus in Jerusalem, Israel on February 25, 1996. That bombing was carried out by the Hamas terrorist organization using material support and resources provided by the Islamic Republic of Iran ("Iran") and the other defendants.

2. Plaintiffs previously brought suit in this Court against the instant defendants under the "terrorism exception" to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §1605(a)(7). *See Bodoff v. Islamic Republic of Iran*, Civil Action No. 02-1991 (RCL).

3. On March 29, 2006, this Court entered a decision finding that Iran and the other defendants had provided Hamas with extensive material support and resources for the execution of terrorist attacks such as that in which decedent was killed, and holding Iran and defendant Ayatollah Ali Hoseini Khamenei ("Khamenei")[1] liable for plaintiffs' injuries. *See Bodoff v. Islamic Republic of Iran*, 424 F.Supp.2d 74 (D.D.C. 2006).

4. The Court entered judgment awarding the plaintiffs compensatory damages against Iran and Khamenei, jointly and severally, totaling $16,988,300. *Id.* at 86-88. The Court denied plaintiffs' request for punitive damages against Iran, but awarded $300,000,000 in punitive damages against defendant Khamenei. *Id.* at 88-89.

5. The defendants have refused to honor the Court's judgment, and the judgment remains entirely unpaid.

---

[1] Plaintiffs were unable to serve the other defendants and so withdrew the action against them.

6. Recognizing the difficulties faced by American victims of terrorism in bringing suits against foreign state sponsors of terrorism, and the even greater challenges faced by successful plaintiffs who seek to enforce their judgments against such defendants, Congress recently enacted sweeping amendments to the FSIA in §1083 of the National Defense Authorization Act for Fiscal Year 2008, H.R. 4986. P.L. 110-181, January 28, 2008 ("Defense Act").

7. Section 1083 of the Defense Act repeals §1605(a)(7) and enacts in its place a new provision, §1605A. Section 1605A(c) creates an entirely new federal cause of action for American citizens injured in terrorist attacks sponsored by designated foreign state sponsors of terrorism. 28 U.S.C. §1605A(c). This new cause of action permits such plaintiffs to seek a broad range of damages, including punitive damages, against foreign state defendants. *Id.*

8. Section 1083 of the Defense Act also amends §1610 of the FSIA, which governs enforcement of judgments against foreign states. A new subsection, §1610(g)(1), contains a statutory-veil-piercing provision, permitting judgments entered under §1605A against a foreign state to be enforced against assets held by the foreign state's subsidiaries. Section 1610(g)(2) also eases enforcement by permitting enforcement of §1605A judgments against assets of the foreign state judgment debtor regulated by the United States.

9. Section 1083(c) of the Defense Act also provides that "If an action arising out of an act or incident has been timely commenced under section 1605(a)(7)" then "any other action arising out of the same act or incident may be brought under section 1605A" if the new action is commenced not later than the latter of 60 days after (A) the date of the entry of judgment in the original action or (B) the date of the enactment of the Defense Act. §1083(c)(3).

10. Accordingly, plaintiffs bring the instant action under §1605A pursuant to §1083(c)(3) of the Defense Act.

## JURISDICTION

11. This Court has jurisdiction over this matter and defendants pursuant to 28 U.S.C. §§1330, 1331, 1332(a)(2) and 1605A(a)(1).

## VENUE

12. Venue is proper in this Court pursuant to 28 U.S.C. §1391(f)(4).

## PARTIES

13. Plaintiff Jeffrey Bodoff is, and at all relevant times was, a citizen of the United States and the administrator of the Estate of Yonathan Barnea.

14. Plaintiffs Shlomit Barnea and Uri Barnea are the siblings of decedent Yonathan Barnea.

15. Plaintiffs Tamara Barnea and Nachum Barnea are the parents of decedent Yonathan Barnea.

16. Defendant The Islamic Republic of Iran ("Iran") is, and at all times relevant hereto was, a foreign state within the meaning of 28 U.S.C. §1603, designated as a state sponsor of terrorism pursuant to section 6(j) of the Export Administration Act of 1979 (50 U.S.C. App. 2405(j)).

17. Defendant The Iranian Ministry of Information and Security ("MOIS") is, and at all times relevant hereto was, the Iranian intelligence service responsible for providing material support and resources to the terrorists who planned and executed the extrajudicial killing of Yonathan Barnea. Within the scope of its agency and office, MOIS provided material support

and resources for the commission of terrorist attacks and performed actions which caused the death of decedent Yonathan Barnea.

18. Defendant Ayatollah Ali Hoseini Khamenei ("Khamenei") is, and at all times relevant hereto was, the Supreme Leader of defendant Iran. Within the scope of his office, employment and agency, defendant Khamenei performed actions which caused the death of decedent Yonathan Barnea.

19. Defendant Ali Akbar Hashemi-Rafsanjani ("Hashemi-Rafsanjani") is the former president, and at all times relevant hereto was the president, of defendant Iran. Within the scope of his office, employment and agency, defendant Hashemi-Rafsanjani performed actions which caused the death of decedent Yonathan Barnea.

20. Defendant Ali Fallahian-Khuzestani ("Fallahian-Khuzestani") is the former Minister of Information and Security for defendant Iran. Within the scope of his office, employment and agency, defendant Fallahian-Khuzestani performed actions which caused the death of decedent Yonathan Barnea.

## STATEMENT OF FACTS

21. Decedent Yonathan Barnea was born on July 16, 1976 in Washington, D.C., and was an American citizen from the time of his birth until his death.

22. At approximately 6:30 A.M. on February 25, 1996, Yonathan Barnea boarded the Number 18 Egged passenger bus in Jerusalem, Israel.

23. At approximately 6:45 A.M., as the Number 18 Egged passenger bus reached the intersection of Jaffa and Sarei Yisrael Streets in Jerusalem, Magid Wardah, a terrorist trained by, belonging to and acting on behalf of the Hamas terrorist organization who had boarded the

Number 18 Egged passenger bus disguised as a passenger, willfully and deliberately detonated a massive explosive charge ("the terrorist bombing").

24. The terrorist bombing completely destroyed the bus, killed 23 persons and injured 49 others. Yonathan Barnea was severely injured in the terrorist bombing and died as a result of his injuries. Also killed in the terrorist bombing were U.S. citizens Ira Weinstein, Matthew Eisenfeld and Sara Duker. Among those injured was U.S. citizen Leah Mousa.

25. Responsibility for the terrorist bombing was immediately claimed by the Hamas terrorist organization.

26. Hamas' involvement in the terrorist bombing was later confirmed by statements given to the Israeli Police by Hamas operative Hassan Salamah, who was convicted by an Israeli Court of planning the terrorist bombing on behalf of Hamas.

27. Hamas, also known as "Islamic Resistance Movement", is an international terrorist organization which receives routine, abundant and systematic material support and resources from defendants in furtherance of its terrorist objectives and activities, as detailed herein.

**Routine Provision of Material Support and Resources to Hamas by Defendants**

28. Since 1984 until the present time, defendant Iran has been designated by the United States Department of State as a state sponsor of terrorism pursuant to Section 6 of the Export Administration Act.

29. Hamas is one of the terrorist organizations to which, at all times relevant hereto, Iran provided material support and resources.

30. During the time period relevant hereto, defendants provided Hamas with material support and resources within the meaning of 28 U.S.C. §1605A, in order to facilitate and further the commission of terrorist attacks by Hamas. Such support was provided routinely and in furtherance and as implementation of a specific policy and practice established and maintained by defendant Iran.

31. The material support and resources provided by defendants to Hamas within the meaning of 28 U.S.C. §1605A included: financial support; professional military training; training bases and facilities; safe haven; lodging; means of communication and communications equipment; financial services, including banking and wire transfer services; and means of transportation.

32. During the period relevant hereto, defendants provided Hamas tens of millions of dollars annually in order to facilitate and further the commission of terrorist attacks by Hamas.

33. During the period relevant hereto, defendants provided Hamas and its operatives with military training in Iranian training bases and facilities in Iran, in order to further and facilitate the commission of terrorist attacks by Hamas and its operatives. This training included the use of explosives, firearms and other weapons ("terrorist training").

34. Terrorist training was provided to Hamas and its operatives by and through Iranian military and intelligence officials, and other agents, employees and officials of defendants acting under the command and direction of defendants.

35. In addition, at all times relevant hereto, defendants provided terrorist training to Hamas and its operatives by and through the agency of terrorist organizations which received material support and resources from defendants, and which acted as proxies and agents of

defendants for the purpose of providing such terrorist training to Hamas. The terrorist organizations which provided terrorist training to Hamas, on behalf of and as agents of defendants, include Hizbollah and various other terrorist organizations.

36. At all times relevant hereto, defendants provided Hamas and its leaders, officials and operatives with lodging, safe haven and shelter, in order to prevent them from being apprehended and permit them to conduct their terrorist activities freely and unhindered.

37. Defendants MOIS, Khamenei, Hashemi-Rafsanjani and Fallahian-Khuzestani provided material support and resources to Hamas on behalf of defendant Iran and in furtherance of the policies of defendant Iran, and while acting within the scope of their office, employment and agency.

38. At all relevant times, defendant MOIS was the Iranian intelligence service, functioning both within and beyond Iranian territory. Acting as an agent of defendant Iran and to further the interests of defendant Iran, defendant MOIS performed acts within the scope of its agency, within the meaning of 28 U.S.C. §1605A, which caused the death of decedent Yonathan Barnea, in that defendant MOIS acted as a conduit for Iran's provision of funds to Hamas and training to Hamas terrorist operatives, including Hassan Salamah.

39. Accordingly, defendant Iran is vicariously liable for the acts of defendant MOIS.

40. At all relevant times, defendants Khamenei, Hashemi-Rafsanjani and Fallahian-Khuzestani were agents, officers and employees of defendants Iran and MOIS and engaged in the actions described herein within the scope of their agency, office and employment and to further the interests of defendants Iran and MOIS.

41. At all relevant times, defendants Khamenei, Hashemi-Rafsanjani and Fallahian-Khuzestani were senior officials of defendant Iran, whose approval would be necessary to carry out the economic commitment of Iran to Hamas and the training of Hamas terrorists by the other defendants and their agents and employees.

42. Accordingly, defendants Iran and MOIS are vicariously liable for the acts of defendants Khamenei, Hashemi-Rafsanjani and Fallahian-Khuzestani.

43. In order to facilitate and further the commission of terrorist attacks by Hamas, defendants gave substantial aid, assistance and encouragement to one another and to Hamas, and knowingly and willingly conspired, agreed and acted in concert with one another and with Hamas, in pursuance of a common plan and design, to provide material support and resources to Hamas.

**CAUSE OF ACTION
ON BEHALF OF ALL PLAINTIFFS AGAINST ALL DEFENDANTS
ACTION FOR DAMAGES UNDER 28 U.S.C. §1605A(c)**

44. The preceding paragraphs are incorporated by reference as though fully set forth herein.

45. Iran is a foreign state that since 1984 has continuously been designated as a state sponsor of terrorism within the meaning of 28 U.S.C. §1605A.

46. Iran and the other defendants provided material support and resources to Hamas, within the meaning of 28 U.S.C. §1605A, which caused and facilitated the terrorist bombing in which decedent Yonathan Barnea was murdered.

47. Defendants MOIS, Khamenei, Hashemi-Rafsanjani and Fallahian-Khuzestani are officials, employees, and/or agents of Iran, and they provided the material support and resources

to Hamas, which caused and facilitated the terrorist bombing in which decedent Yonathan Barnea was murdered, within the scope of their office, employment and/or or agency.

48. The terrorist bombing in which decedent Yonathan Barnea was murdered was an extrajudicial killing within the meaning of 28 U.S.C. §1605A.

49. The murder of Yonathan Barnea caused decedent, his estate and the other plaintiffs severe injury, including: pain and suffering; pecuniary loss and loss of income; loss of guidance, companionship and society; loss of consortium; severe emotional distress and mental anguish; and loss of solatium.

50. The harm and injuries suffered by the decedent and the plaintiffs due to the terrorist bombing were the direct and proximate result of defendants' conduct described herein.

51. Defendants are therefore jointly and severally liable for the full amount of plaintiffs' damages under 28 U.S.C. §1605A(c), in such sums as may hereinafter be determined.

52. Defendants' conduct was criminal in nature, outrageous, extreme, wanton, willful, malicious, and constitutes a threat to the public warranting an award of punitive damages under 28 U.S.C. §1605A(c).

**WHEREFORE**, plaintiffs demand judgment against the defendants, jointly and severally, as follows:

A. Compensatory damages against all defendants, jointly and severally, in amounts to be determined at trial;

B. Punitive damages against all defendants, jointly and severally, in amounts to be determined at trial;

C. Reasonable costs and expenses;

    D.    Reasonable attorneys' fees;

    E.    Such further relief as the Court finds just and equitable.

Dated: New York, New York
       March 27, 2008

/s/ Mitchell Shenkman
Mitchell Shenkman, Esq.
(Bar Identification No. NY0035)
The Abramson Law Group, PLLC
Attorneys for Plaintiffs
570 Lexington Avenue, 23rd Floor
New York, New York 10022
(212) 686-4401

CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| JEFFREY BODOFF, as Admininistrator of the Estate of Yonathan Barnea, et al. | THE ISLAMIC REPUBLIC OF IRAN, et al. |
| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  88888 (EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  99999 (IN U.S. PLAINTIFF CASES ONLY) NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |
| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) Mitchell B. Shenkman, Esq. The Abramson Law Group, PLLC 570 Lexington Avenue, 23rd Floor New York, New York 10022 | ATTORNEYS (IF KNOWN) |

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ● 3 Federal Question (U.S. Government Not a Party)
- ○ 2 U.S. Government Defendant
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ● 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ● 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

○ **A. Antitrust**
- ☐ 410 Antitrust

○ **B. Personal Injury/Malpractice**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 368 Asbestos Product Liability

○ **C. Administrative Agency Review**
- ☐ 151 Medicare Act

Social Security:
- ☐ 861 HIA ((1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g)
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g)

Other Statutes
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

● **E. General Civil (Other)** OR ○ **F. Pro Se General Civil**

Real Property
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

Personal Property
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

Bankruptcy
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

Property Rights
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

Federal Tax Suits
- ☐ 870 Taxes (US plaintiff or defendant
- ☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
- ☐ 610 Agriculture
- ☐ 620 Other Food &Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

Other Statutes
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☒ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
- ● 1 Original Proceeding
- ○ 2 Removed from State Court
- ○ 3 Remanded from Appellate Court
- ○ 4 Reinstated or Reopened
- ○ 5 Transferred from another district (specify)
- ○ 6 Multi district Litigation
- ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
Action for damages resulting from foreign state sponsored terrorism under 28 USC 1605 et seq. and 28 USC 1605A

**VII. REQUESTED IN COMPLAINT** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $ 100,000,000.00   Check YES only if demanded in complaint
JURY DEMAND:   YES ☐   NO ☒

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☒   NO ☐   If yes, please complete related case form.

DATE March 27, 2008   SIGNATURE OF ATTORNEY OF RECORD _[signature]_

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.